**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
CASE NO.

SPIKE CABLE NETWORKS INC.,

    Plaintiff,

vs.

THE INDIVIDUALS, BUSINESS ENTITIES,
AND UNINCORPORATED ASSOCIATIONS
IDENTIFIED ON SCHEDULE "A,"

    Defendants.

_____/

## COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Plaintiff, Spike Cable Networks Inc. ("Plaintiff"), known to consumers as "Paramount Network," hereby sues Defendants, the Individuals, Business Entities, and Unincorporated Associations identified on Schedule "A" (collectively "Defendants"). Defendants are promoting, advertising, distributing, offering for sale, and/or selling goods bearing and/or using counterfeits and confusingly similar imitations of Plaintiff's trademarks within this district through various Internet based e-commerce stores operating under the seller names set forth on Schedule "A" (the "E-commerce Store Names"). In support of its claims, Plaintiff alleges as follows:

## JURISDICTION AND VENUE

1.  This is an action for damages and injunctive relief for federal trademark counterfeiting and infringement, false designation of origin, common law unfair competition, and common law trademark infringement pursuant to 15 U.S.C. §§ 1114, 1116, 1125(a), The All Writs Act, 28 U.S.C §1651(a) and Florida's common law. Accordingly, this Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiff's state law claims

because those claims are so related to the federal claims that they form part of the same case or controversy.

2.     Defendants are subject to personal jurisdiction in this district, because they direct business activities toward and conduct business with consumers throughout the United States, including within the State of Florida and this district through, at least, the Internet based e-commerce stores accessible and doing business in Florida and operating under their E-commerce Store Names. Alternatively, based on their overall contacts with the United States, Defendants are subject to personal jurisdiction in this district pursuant to Federal Rule of Civil Procedure 4(k)(2) because (i) Defendants are not subject to jurisdiction in any state's court of general jurisdiction; and (ii) exercising jurisdiction is consistent with the United States Constitution and laws.

3.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 since Defendants are, upon information and belief, non-residents in the United States and engaged in infringing activities and causing harm within this district by advertising, offering to sell, selling, and/or shipping infringing products into this district.

## THE PLAINTIFF

4.     Plaintiff is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business at 1515 Broadway, New York, NY.

5.     Plaintiff is a wholly owned subsidiary of Paramount Global (formerly known as ViacomCBS Inc.), a premier global media, streaming, and entertainment company that, through subsidiaries like Plaintiff, has for many years developed, created, and provided entertainment content, services, and related branded products. Further, Paramount Global provides entertainment services to a broad segment of the consumer population worldwide, reaching over four (4) billion subscribers in more than 180 countries.

6.      Plaintiff is a well-known cable television network home to many famous television series, including INK MASTER and BAR RESCUE. For many years Plaintiff and its affiliated production companies have created and distributed entertainment programs across various media, including television and various digital platforms. Among the most popular and widely celebrated entertainment properties is the critically acclaimed dramatic television series YELLOWSTONE, starring Kevin Costner, Kelly Reilly, Cole Hauser, Luke Grimes, and Wes Bentley (the "Series" or "YELLOWSTONE").

7.      YELLOWSTONE is a contemporary Western television series consisting of five (5) seasons, which first aired on Paramount Network in 2018 and is currently available to stream and download on various digital platforms. The Series centers on the fictional Dutton family, who own the largest contiguous ranch in the United States. The Duttons are led by John Dutton, the family's patriarch and head of their vast ranching empire. The Series follows the Duttons as they navigate numerous ongoing challenges, including the family's perpetual struggle to defend their ranch against an onslaught of attacks by land developers intent on encroaching on their land, as well as internal family drama and other outside threats.

8.      The Series has been and continues to be ~~is~~ a tremendous ~~hit~~ success and has captivated viewers since its debut on Paramount Network. The wildly popular Series reached an average of over five (5) million viewers weekly throughout its nine-episode first season. Moreover, Season One content amassed more than twelve (12) million streams across Paramount Global owned-and-operated platforms and garnered more than nine (9) million video-on-demand transactions, which marked the highest consumption for any Paramount Network series in the channel's history at the time.

9.      Since the Series premiere, the popularity of the Series has continued to grow among consumers. Even reruns of the Series, aired years after the Series first premiered, gained significant traction. For example, a rerun of Season One, Episode One that aired on the broadcast television network CBS on September 17, 2023, drew over six (6) million viewers, which made YELLOWSTONE the top entertainment program of that week. Seasons One, Two, and Three continued to be broadcast on the television network CBS throughout the rest of 2023, drawing an average of five (5) million viewers to each episode.

10.     YELLOWSTONE's fifth and final season, which was split into two parts consisting of fourteen (14) total episodes, enjoyed unprecedented success among the YELLOWSTONE franchise. Season Five, Part One, premiered on Paramount Network on November 13, 2022, attracting a staggering nearly nine (9) million live viewers, which equated to a ten (10) percent increase in viewership from the Season Four premiere. Further, Episode Eight of Season Five, Part One, aired on Paramount Network on January 1, 2023, and was the second most watched single telecast on cable channels in 2023.

11.     Season Five, Part Two was the most-watched season in YELLOWSTONE history, with the premiere on November 10, 2024, attracting over sixteen (16) million viewers on its first night across various Paramount Global-owned networks. Further, the Season Five, Part Two finale drew over thirteen (13) million viewers on Paramount Network alone in the first three days after its December 15, 2024, premiere.

12.     In addition to being a clear commercial success, the Series has also attracted notable critical acclaim, including nominations for Best Cable Drama Series at the 2024 Astra Television Awards, Best Show at both the 2022 and 2023 MTV Movie & TV Awards, and Best Drama Series at the 2023 Critics Choice Awards. Moreover, Kevin Costner's stellar portrayal of patriarch John

4

Dutton earned him the Best Performance by an Actor in a Television Series – Drama award at the 2023 Golden Globes.

13.     YELLOWSTONE fans can purchase a wide variety of merchandise related to the characters and other elements of the Series, including YELLOWSTONE-branded and inspired apparel, hats, costumes, mobile phone accessories, pet accessories, jewelry, games, puzzles, figurines, books, mugs and other drinkware, towels, blankets, pillows, belt buckles, footwear, furniture, bags, and more.

14.     Further, Plaintiff is engaged in the business of manufacturing and distributing throughout the world, including within this district, a variety of high-quality YELLOWSTONE related goods and services under multiple world-famous common law and federally registered YELLOWSTONE trademarks including those identified on Schedule "B" hereto as discussed in Paragraph 24 below. Plaintiff, through its global licensing program, offers for sale, sells, and licenses others to offer for sale and sell its trademarked goods within the State of Florida, including this district and throughout the United States. Defendants, through the sale and offers for sale of counterfeit and infringing YELLOWSTONE branded products, are directly and unfairly competing with Plaintiff's economic interests in the United States, including the State of Florida, and causing Plaintiff irreparable harm and damage within this jurisdiction.

15.     Like many other famous intellectual property owners in the entertainment industry, Plaintiff suffers ongoing daily and sustained violations of its intellectual property rights at the hands of counterfeiters and infringers, such as Defendants herein, who wrongfully reproduce, copy, and/or counterfeit Plaintiff's YELLOWSTONE trademarks for the twin purposes of (i) duping and confusing the consuming public and (ii) earning substantial profits across their e-commerce stores. The natural and intended byproduct of Defendants' combined actions is the

erosion and destruction of the goodwill associated with Plaintiff and the YELLOWSTONE name and associated intellectual properties and the destruction of the legitimate market sector in which it operates.

16.     To combat the indivisible harm caused by the concurrent actions of Defendants and others engaging in similar conduct, each year Plaintiff expends significant monetary resources in connection with intellectual property enforcement efforts, including legal fees and investigative fees. The exponential growth of counterfeiting over the Internet, including through online marketplace and social media platforms, has created an environment that requires companies, such as Plaintiff, to expend significant resources across a wide spectrum of efforts, in order to protect both consumers and itself from confusion and the erosion of the goodwill embodied in Plaintiff's YELLOWSTONE brand.

## THE DEFENDANTS

17.     Defendants are individuals, business entities of unknown makeup or unincorporated associations each of whom, upon information and belief, either reside and/or operate in foreign jurisdictions, redistribute products from the same or similar sources in those locations, and/or ship their goods from the same or similar sources in those locations to consumers as well as shipping and fulfillment centers, warehouses, and/or storage facilities within the United States to redistribute their products from those locations. Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b). Defendants target their business activities toward consumers throughout the United States, including within this district, through the simultaneous operation of, at least, their commercial Internet based e-commerce stores under the E-commerce Store Names.

18.     Defendants use aliases in conjunction with the operation of their businesses, including but not limited to those identified by Defendant Number on Schedule "A."

19.     Defendants are the past and/or present controlling forces behind the sale of products bearing and/or using counterfeits and infringements of Plaintiff's YELLOWSTONE trademarks as described herein.

20.     Defendants directly engage in unfair competition with Plaintiff by advertising, offering for sale, and/or selling goods each bearing and/or using counterfeits and infringements of one or more of Plaintiff's YELLOWSTONE trademarks to consumers within the United States and this district through Internet based e-commerce stores using, at least, the E-commerce Store Names, as well as additional e-commerce store or seller identification aliases not yet known to Plaintiff. Defendants have purposefully directed some portion of their unlawful activities toward consumers in the State of Florida through the advertisement, offer to sell, sale, and/or shipment of counterfeit and infringing YELLOWSTONE-branded goods into the State.

21.     Defendants have registered, established or purchased, and maintained their E-commerce Store Names. Defendants may have engaged in fraudulent conduct with respect to the registration or maintenance of the E-commerce Store Names by providing false and/or misleading information during the registration or maintenance process related to their respective E-commerce Store Names. Many Defendants have anonymously registered and/or maintained their E-commerce Store Names for the sole purpose of engaging in unlawful counterfeiting and infringing activities.

22.     Defendants will likely continue to register or acquire new e-commerce store names or other aliases, as well as related payment accounts, for the purpose of selling and/or offering for

sale goods bearing and/or using counterfeit and confusingly similar imitations of one or more of Plaintiff's YELLOWSTONE trademarks unless preliminarily and permanently enjoined.

23. Defendants' E-commerce Store Names, associated payment accounts, and any other alias e-commerce store or seller identification names used in connection with the sale of counterfeit and infringing goods bearing and/or using one or more of Plaintiff's YELLOWSTONE trademarks are essential components of Defendants' online activities and are one of the means by which Defendants further their counterfeiting and infringement schemes and cause harm to Plaintiff. Moreover, Defendants are using Plaintiff's famous YELLOWSTONE brand name and/or trademarks to drive Internet consumer traffic to at least one of their e-commerce stores operating under the E-commerce Store Names, thereby increasing the value of the E-commerce Store Names and decreasing the size and value of Plaintiff's legitimate marketplace and intellectual property rights at Plaintiff's expense.

## COMMON FACTUAL ALLEGATIONS

### Plaintiff's Business and Trademark Rights

24. Plaintiff is the owner of all rights in and to the trademarks identified on Schedule "B" hereto, which are valid and registered on the Principal Register of the United States Patent and Trademark Office (collectively the "YELLOWSTONE Marks"). The YELLOWSTONE Marks are used in connection with the manufacture and distribution of high-quality goods in the categories identified on Schedule "B." True and correct copies of the Certificates of Registration for the YELLOWSTONE Marks are attached hereto as Composite Exhibit "1."

25. The YELLOWSTONE Marks have been used in interstate commerce to identify and distinguish Plaintiff's high-quality YELLOWSTONE goods for an extended period of time.

26.     The YELLOWSTONE Marks have been used in commerce by Plaintiff long prior in time to Defendants' use of copies of those Marks. The YELLOWSTONE Marks have never been assigned or licensed to any of the Defendants in this matter.

27.     The YELLOWSTONE Marks are symbols of Plaintiff's quality, reputation and goodwill and have never been abandoned. Plaintiff has carefully monitored and policed the use of the YELLOWSTONE Marks.

28.     The YELLOWSTONE Marks are well known and famous and have been for many years. Plaintiff expends substantial resources developing, advertising, and otherwise promoting the YELLOWSTONE Marks. The YELLOWSTONE Marks qualify as famous marks as that term is used in 15 U.S.C. §1125(c)(1).

29.     Further, Plaintiff extensively uses, advertises, and promotes the YELLOWSTONE Marks in the United States in association with the sale of high-quality goods. Plaintiff has expended significant resources promoting the YELLOWSTONE Marks and products bearing such trademarks. Sales of YELLOWSTONE-branded merchandise, and associated licensing fees and royalties, have proven lucrative for Plaintiff, such that its exclusive rights to use or license the YELLOWSTONE Marks are extremely valuable.

30.     As a result of Plaintiff's efforts, members of the consuming public readily identify merchandise bearing or sold under the YELLOWSTONE Marks as being high-quality goods sponsored and approved by Plaintiff.

31.     Accordingly, the YELLOWSTONE Marks have achieved secondary meaning among consumers as identifiers of high-quality goods.

32.     Genuine goods bearing and/or using the YELLOWSTONE Marks are widely legitimately advertised and promoted by Plaintiff, its authorized distributors, and unrelated third

parties via the Internet. Visibility on the Internet, particularly via Internet search engines and social media platforms, is important to Plaintiff's overall marketing and consumer education efforts. Thus, Plaintiff expends significant monetary and other resources on Internet marketing and consumer education regarding its products, including search engine optimization strategies, search engine marketing, and social media strategies. Those strategies allow Plaintiff and its authorized retailers to fairly and legitimately educate consumers about the value associated with Plaintiff's YELLOWSTONE brand and the goods sold thereunder, and the problems associated with the counterfeiting of Plaintiff's YELLOWSTONE trademarks.

**Defendants' Infringing Activities**

33.     Defendants are each promoting, advertising, distributing, selling, and/or offering for sale goods in interstate commerce bearing and/or using counterfeit and confusingly similar imitations of one or more of the YELLOWSTONE Marks (the "Counterfeit Goods") through at least the e-commerce stores operating under the E-commerce Store Names. Specifically, Defendants are each using the YELLOWSTONE Marks to initially attract online consumers and drive them to Defendants' e-commerce stores operating under the E-commerce Store Names. Defendants are each using virtually identical copies of one or more of the YELLOWSTONE Marks for different quality goods. Plaintiff has used the YELLOWSTONE Marks extensively and continuously before Defendants began offering counterfeit and confusingly similar imitations of Plaintiff's YELLOWSTONE merchandise.

34.     Defendants' Counterfeit Goods are of a quality substantially different than that of Plaintiff's genuine YELLOWSTONE goods. Defendants are actively using, promoting and otherwise advertising, distributing, selling and/or offering for sale substantial quantities of their Counterfeit Goods with the knowledge and intent that such goods will be mistaken for the genuine

high-quality YELLOWSTONE goods offered for sale by Plaintiff, despite Defendants' knowledge that they are without authority to use the YELLOWSTONE Marks. The net effect of Defendants' actions is likely to cause confusion of consumers, at the time of initial interest, sale, and in the post-sale setting, who will believe all of Defendants' goods offered for sale in or through Defendants' e-commerce stores are genuine YELLOWSTONE goods originating from, associated with, and/or approved by Plaintiff.

35.     Defendants advertise their e-commerce stores, including their Counterfeit Goods offered for sale, to the consuming public via e-commerce stores using, at least, the E-commerce Store Names. In so doing, Defendants improperly and unlawfully use one or more of the YELLOWSTONE Marks without Plaintiff's permission.

36.     Defendants are concurrently employing and benefitting from substantially similar advertising and marketing strategies based, in large measure, upon an unauthorized use of counterfeits and infringements of the YELLOWSTONE Marks. Specifically, Defendants are using counterfeits and infringements of Plaintiff's famous YELLOWSTONE brand name and the YELLOWSTONE Marks to make their e-commerce stores selling unauthorized goods appear more relevant and attractive to consumers searching for both YELLOWSTONE and non-YELLOWSTONE goods and information online. By their actions, Defendants are jointly contributing to the creation and maintenance of an unlawful marketplace operating in parallel to the legitimate marketplace for Plaintiff's genuine YELLOWSTONE goods. Defendants are causing individual, concurrent, and indivisible harm to Plaintiff and the consuming public by (i) depriving Plaintiff and other third parties of their right to fairly compete for space online and within search engine results and reducing the visibility of Plaintiff's genuine YELLOWSTONE goods on the World Wide Web, (ii) causing an overall degradation of the value of the goodwill associated

11

with the YELLOWSTONE Marks by viewing inferior products in either the pre or post sale setting, and/or (iii) increasing Plaintiff's overall cost to market its YELLOWSTONE goods and educate consumers about its YELLOWSTONE brand via the Internet.

37.    Defendants are concurrently conducting and targeting their counterfeiting and infringing activities toward consumers and likely causing unified harm within this district and elsewhere throughout the United States. As a result, Defendants are defrauding Plaintiff and the consuming public for Defendants' own benefit.

38.    At all times relevant hereto, Defendants in this action have had full knowledge of Plaintiff's ownership of the YELLOWSTONE Marks, including its exclusive right to use and license such intellectual property and the goodwill associated therewith.

39.    Defendants' use of the YELLOWSTONE Marks, including the promotion and advertisement, reproduction, distribution, sale and offering for sale of their Counterfeit Goods, is without Plaintiff's consent or authorization.

40.    Defendants are engaging in the above-described unlawful counterfeiting and infringing activities knowingly and intentionally or with reckless disregard or willful blindness to Plaintiff's rights for the purpose of trading on Plaintiff's goodwill and reputation. If Defendants' intentional counterfeiting and infringing activities are not preliminarily and permanently enjoined by this Court, Plaintiff and the consuming public will continue to be harmed.

41.    Defendants' above identified infringing activities are likely to cause confusion, deception, and mistake in the minds of consumers before, during and after the time of purchase. Moreover, Defendants' wrongful conduct is likely to create a false impression and deceive consumers, the public, and the trade into believing there is a connection or association between

Plaintiff's genuine YELLOWSTONE goods and Defendants' Counterfeit Goods, which there is not.

42.     Given the visibility of Defendants' various e-commerce stores and the similarity of their concurrent actions, it is clear Defendants are either affiliated, or at a minimum, cannot help but know of each other's existence and the unified harm likely to be caused to Plaintiff and the overall consumer market in which they operate because of Defendants' concurrent actions.

43.     Although some Defendants may be physically acting independently, they may properly be deemed to be acting in concert because the combined force of their actions serves to multiply the harm caused to Plaintiff.

44.     Defendants' payment and financial accounts, including but not limited to those specifically set forth on Schedule "A," are being used by Defendants to accept, receive, and deposit profits from Defendants' trademark counterfeiting and infringing and unfairly competitive activities connected to their E-commerce Store Names, and any other alias e-commerce store names being used and/or controlled by them.

45.     Further, Defendants, upon information and belief, are likely to transfer or secret their assets to avoid payment of any monetary judgment awarded to Plaintiff.

46.     Plaintiff has no adequate remedy at law.

47.     Plaintiff is suffering irreparable injury and has suffered substantial damages because of Defendants' unauthorized and wrongful use of the YELLOWSTONE Marks. If Defendants' intentional counterfeiting, infringing, and unfairly competitive activities are not preliminarily and permanently enjoined by this Court, Plaintiff and the consuming public will continue to be harmed while Defendants wrongfully earn a substantial profit.

48.     The harm and damages sustained by Plaintiff has been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offers to sell, and sale of their Counterfeit Goods.

### COUNT I - TRADEMARK COUNTERFEITING AND INFRINGEMENT PURSUANT TO § 32 OF THE LANHAM ACT (15 U.S.C. § 1114)

49.     Plaintiff hereby adopts and re-alleges the factual allegations set forth in Paragraphs 1 through 48 above.

50.     This is an action for trademark counterfeiting and infringement against Defendants based on their use of counterfeit and confusingly similar imitations of the YELLOWSTONE Marks in commerce in connection with the promotion, advertisement, distribution, offering for sale and sale of the Counterfeit Goods.

51.     Defendants are promoting and otherwise advertising, selling, offering for sale, and/or distributing goods bearing and/or using counterfeits and/or infringements of one or more of the YELLOWSTONE Marks. Defendants are continuously infringing and inducing others to infringe the YELLOWSTONE Marks by using one or more of them to advertise, promote, sell, and/or offer to sell counterfeit and infringing YELLOWSTONE branded goods.

52.     Defendants' concurrent counterfeiting and infringing activities are likely to cause and are causing confusion, mistake, and deception among members of the trade and the general consuming public as to the origin and quality of Defendants' Counterfeit Goods.

53.     Defendants' unlawful actions have caused and are continuing to cause unquantifiable damages and irreparable harm to Plaintiff and are unjustly enriching Defendants with profits at Plaintiff's expense.

54.     Defendants' above-described unlawful actions constitute counterfeiting and infringement of the YELLOWSTONE Marks in violation of Plaintiff's rights under § 32 of the Lanham Act, 15 U.S.C. § 1114.

55.     Plaintiff has suffered and will continue to suffer irreparable injury and damages while Defendants are unjustly profiting due to Defendants' above-described activities if Defendants are not preliminarily and permanently enjoined.

## COUNT II - FALSE DESIGNATION OF ORIGIN
## PURSUANT TO § 43(a) OF THE LANHAM ACT (15 U.S.C. § 1125(a))

56.     Plaintiff hereby adopts and re-alleges the factual allegations set forth in Paragraphs 1 through 48 above.

57.     Defendants' Counterfeit Goods bearing, offered for sale, and/or sold using copies of at least one of the YELLOWSTONE Marks have been widely advertised and offered for sale throughout the United States via the Internet.

58.     Defendants' Counterfeit Goods bearing, offered for sale, and/or sold using copies of one or more of the YELLOWSTONE Marks are virtually identical in appearance to Plaintiff's genuine YELLOWSTONE goods. However, Defendants' Counterfeit Goods are different in quality. Accordingly, Defendants' activities are likely to cause confusion among consumers as to at least the origin or sponsorship of their Counterfeit Goods.

59.     Defendants have used in connection with their advertisement, offer for sale, and/or sale of their Counterfeit Goods, false designations of origin and false descriptions and representations, including words or other symbols and designs, which tend to falsely describe or represent such goods and have caused such goods to enter into commerce in the United States with full knowledge of the falsity of such designations of origin and such descriptions and representations, all to Plaintiff's detriment.

60.     Defendants have each authorized infringing uses of one or more of the YELLOWSTONE Marks in Defendants' advertisement and promotion of their counterfeit and infringing branded goods. Some Defendants have also misrepresented to members of the consuming public that the Counterfeit Goods they advertise and sell are genuine, non-infringing goods.

61.     Additionally, Defendants are simultaneously using counterfeits and infringements of one or more of the YELLOWSTONE Marks to unfairly compete with Plaintiff and others for space within organic and paid search engine and social media results. Defendants are thereby jointly (i) depriving Plaintiff of valuable marketing and educational space online which would otherwise be available to Plaintiff and (ii) reducing the visibility of Plaintiff's genuine YELLOWSTONE goods on the World Wide Web and across social media platforms.

62.     Defendants' above-described actions are in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

63.     Plaintiff has no adequate remedy at law and has sustained both individual and indivisible injury and damages caused by Defendants' concurrent conduct. Absent an entry of an injunction by this Court, Plaintiff will continue to suffer irreparable injury to its goodwill and business reputation, as well as monetary damages, while Defendants are unjustly profiting.

**COUNT III - COMMON LAW UNFAIR COMPETITION.**

64.     Plaintiff hereby adopts and re-alleges the factual allegations set forth in Paragraphs 1 through 48 above.

65.     This is an action against Defendants based on their promotion, advertisement, distribution, sale, and/or offering for sale of goods bearing and/or using marks that are virtually

identical to one or more of the YELLOWSTONE Marks in violation of Florida's common law of unfair competition.

66.    Specifically, Defendants are each promoting and otherwise advertising, selling, offering for sale, and/or distributing goods bearing and/or using counterfeits and infringements of one or more of the YELLOWSTONE Marks. Defendants are also each using counterfeits and infringements of one or more of the YELLOWSTONE Marks to unfairly compete with Plaintiff and others for (i) space in search engine and social media results across an array of search terms and (ii) visibility on the World Wide Web.

67.    Defendants' infringing activities are likely to cause and are causing confusion, mistake and deception among consumers as to the origin and quality of Defendants' e-commerce stores as a whole and all products sold therein by their use of the YELLOWSTONE Marks.

68.    Plaintiff has no adequate remedy at law and is suffering irreparable injury and damages because of Defendants' concurrent actions, while Defendants are unjustly profiting due to their above-described activities if Defendants are not preliminarily and permanently enjoined.

## COUNT IV - COMMON LAW TRADEMARK INFRINGEMENT

69.    Plaintiff hereby adopts and re-alleges the factual allegations set forth in Paragraphs 1 through 48 above.

70.    Plaintiff is the owner of all common law rights in and to the YELLOWSTONE Marks.

71.    This is an action for common law trademark infringement against Defendants based on their promotion, advertisement, offering for sale, and/or sale of their Counterfeit Goods bearing and/or using one or more of the YELLOWSTONE Marks.

72.     Specifically, each Defendant is promoting, and otherwise advertising, distributing, offering for sale, and/or selling goods bearing and/or using infringements of one or more of the YELLOWSTONE Marks.

73.     Defendants' infringing activities are likely to cause and are causing confusion, mistake and deception among consumers as to the origin and quality of Defendants' Counterfeit Goods bearing and/or using the YELLOWSTONE Marks.

74.     Plaintiff has no adequate remedy at law and is suffering irreparable injury and damages because of Defendants' concurrent actions, while Defendants are unjustly profiting due to their above-described activities if Defendants are not preliminarily and permanently enjoined.

## PRAYER FOR RELIEF

75.     WHEREFORE, Plaintiff, Spike Cable Networks Inc. demands judgment on all Counts of this Complaint and an award of equitable relief and monetary relief against Defendants as follows:

a.     Entry of temporary, preliminary, and permanent injunctions pursuant to 15 U.S.C. § 1116, 28 U.S.C. § 1651(a), The All Writs Act, and Federal Rule of Civil Procedure 65 enjoining Defendants, their agents, representatives, servants, employees, and all those acting in concert or participation therewith, from manufacturing or causing to be manufactured, importing, advertising or promoting, distributing, selling or offering to sell their Counterfeit Goods; from infringing, counterfeiting, or diluting the YELLOWSTONE Marks; from using the YELLOWSTONE Marks, or any mark or design similar thereto, in connection with the sale of any unauthorized goods; from using any logo, trade name, or trademark or design that may be calculated to falsely advertise the services or goods of Defendants as being sponsored by, authorized by, endorsed by, or in any way associated with Plaintiff; from falsely representing

themselves as being connected with Plaintiff, through sponsorship or association, or engaging in any act that is likely to falsely cause members of the trade and/or of the purchasing public to believe any goods or services of Defendants are in any way endorsed by, approved by, and/or associated with Plaintiff; from using any reproduction, counterfeit, infringement, copy, or colorable imitation of the YELLOWSTONE Marks in connection with the publicity, promotion, sale, or advertising of any goods sold by Defendants; from affixing, applying, annexing or using in connection with the sale of any goods, a false description or representation, including words or other symbols tending to falsely describe or represent Defendants' goods as being those of Plaintiff, or in any way endorsed by Plaintiff and from offering such goods in commerce; from engaging in search engine optimization strategies using colorable imitations of Plaintiff's names or trademarks, including those associated with the YELLOWSTONE franchise, and from otherwise unfairly competing with Plaintiff.

b.      Entry of a temporary restraining order, as well as preliminary and permanent injunctions pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority, enjoining Defendants and all third parties with actual notice of an injunction issued by the Court from participating in, including providing financial services, technical services or other support to, Defendants in connection with the sale and distribution of non-genuine goods bearing and/or using counterfeits and/or infringements of the YELLOWSTONE Marks.

c.      Entry of an order pursuant to 28 U.S.C. § 1651(a) The All Writs Act, and the Court's inherent authority, that upon Plaintiff's request, those acting in concert or participation as service providers to Defendants, who have notice of the injunction, shall disable and/or cease hosting, facilitating access to, or providing any supporting service to any and all e-commerce stores, including but not limited to the E-Commerce Store Names, through which Defendants

engage in the promotion, offering for sale and/or sale of goods bearing and/or using counterfeits and/or infringements of the YELLOWSTONE Marks.

        d.    Entry of an order pursuant to 15 U.S.C. § 1116, 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority, that upon Plaintiff's request, Defendants and the top level domain (TLD) Registry for each of the E-commerce Store Names, or their administrators, including backend registry operators or administrators, place the E-commerce Store Names, and any other e-commerce store names being used and/or controlled by Defendants to engage in the business of marketing, offering to sell, and/or selling goods bearing and/or using counterfeits and/or infringements of the YELLOWSTONE Marks, on Registry Hold status for the remainder of the registration period for any such e-commerce store, thus removing them from the TLD zone files which link the E-commerce Store Names, and any other e-commerce store name used by Defendants, to the IP addresses where the associated e-commerce store names are hosted.

        e.    Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority authorizing Plaintiff to serve an injunction issued by the Court on the e-commerce store's registrar(s) and/or the privacy protection service(s) for the E-commerce Store Names to disclose to Plaintiff the true identities and contact information for the registrants of the E-commerce Store Names.

        f.    Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority, canceling for the life of the current registration or, at Plaintiff's election, transferring the E-commerce Store Names and any other e-commerce store names used by Defendants to engage in their counterfeiting of the YELLOWSTONE Marks at issue to Plaintiff's control so they may no longer be used for unlawful purposes.

g.      Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority, authorizing Plaintiff to request any Internet search engines or service providers referring or linking users to any Uniform Resource Locator ("URL") of the E-commerce Store Names, which are provided with notice of the order, to permanently disable, de-index or delist all URLs of the E-commerce Store Names and/or permanently disable the references or links to all URLs of the E-commerce Store Names used by Defendants to promote, offer for sale, and/or sell goods bearing and/or using counterfeits and/or infringements of the YELLOWSTONE Marks, based upon Defendants' unlawful activities being conducted via the E-commerce Store Names as a whole and via any specific URLs identified by Plaintiff.

h.      Entry of an order pursuant to 15 U.S.C. § 1116 and the Court's inherent authority, requiring Defendants, their agent(s) or assign(s), to assign all rights, title, and interest, to their E-commerce Store Name(s), and any other e-commerce store names used by Defendants, to Plaintiff and, if within five (5) days of entry of such order Defendants fail to make such an assignment, the Court order the act to be done by another person appointed by the Court at Defendants' expense, such as the Clerk of Court, pursuant to Federal Rule of Civil Procedure 70(a).

i.      Entry of an order pursuant to 15 U.S.C. § 1116 and the Court's inherent authority, requiring Defendants, their agent(s) or assign(s) to instruct in writing, all search engines to permanently delist or deindex the E-commerce Store Name(s), and any other e-commerce store names used by Defendants, and, if within five (5) days of entry of such order Defendants fail to make such a written instruction, the Court order the act to be done by another person appointed by the Court at Defendants' expense, such as the Clerk of Court, pursuant to Federal Rule of Civil Procedure 70(a).

j.      Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority, authorizing Plaintiff to serve an injunction issued by the Court on any e-mail service provider with a request that the service provider permanently suspend the e-mail addresses that are or have been used by Defendants in connection with Defendants' promotion, offering for sale, and/or sale of goods bearing and/or using counterfeits, and/or infringements of the YELLOWSTONE Marks.

k.      Entry of an order requiring, upon Plaintiff's request, Defendants to request in writing permanent termination of any messaging services, E-commerce Store Names, usernames, e-commerce stores, and social media accounts they own, operate, or control on any messaging service, e-commerce marketplace, or social media platform.

l.      Entry of an Order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and this Court's inherent authority that, upon Plaintiff's request, the applicable governing operators and/or administrators for the E-commerce Store Names who are provided with notice of an injunction issued by the Court, disable and/or cease facilitating access to the E-commerce Store Names and any other alias seller identification names being used and/or controlled by Defendants to engage in the business of marketing, offering to sell, and/or selling goods bearing and/or using counterfeits and infringements of the YELLOWSTONE Marks.

m.      Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and this Court's inherent authority that, upon Plaintiff's request, any Internet marketplace website operators, administrators, registrars, and/or top level domain (TLD) Registries for the E-commerce Store Names who are provided with notice of an injunction issued by the Court, shall identify any e-mail address known to be associated with Defendants' respective E-commerce Store Names.

n.     Entry of an Order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, Federal Rule of Civil Procedure 65, and this Court's inherent authority that, upon Plaintiff's request, Defendants and any Internet marketplace website operators and/or administrators who are provided with notice of an injunction issued by this Court, shall immediately cease fulfillment of and sequester all goods of each Defendant bearing and/or using one or more of the YELLOWSTONE Marks in its inventory, possession, custody, or control, and surrender those goods to Plaintiff.

o.     Entry of an order pursuant to 15 U.S.C. § 1116 and the Court's inherent authority, requiring Defendants, their agent(s) or assign(s) to instruct in writing, the Registrar(s) for each of the E-commerce Store Name(s) to permanently close the registration account(s) in which any E-commerce Store Name(s) are located and, if within five (5) days of entry of such Order Defendants fail to make such a written instruction, the Court order the act to be done by another person appointed by the Court at Defendants' expense, such as the Clerk of Court, pursuant to Federal Rule of Civil Procedure 70(a).

p.     Entry of an order requiring Defendants to account to and pay Plaintiff for all profits and damages resulting from Defendants' trademark counterfeiting and infringing and unfairly competitive activities and that the award to Plaintiff be trebled, as provided for under 15 U.S.C. §1117, or that Plaintiff be awarded statutory damages from each Defendant in the amount of two million dollars ($2,000,000.00) per each counterfeit trademark used and product type offered for sale or sold, as provided by 15 U.S.C. §1117(c)(2) of the Lanham Act.

q.     Entry of an award pursuant to 15 U.S.C. § 1117 (a) and (b) of Plaintiff's costs and reasonable attorneys' fees and investigative fees associated with bringing this action.

r.     Entry of an order pursuant to 15 U.S.C. § 1116, 28 U.S.C. § 1651(a), The

All Writs Act, Federal Rule of Civil Procedure 65, and the Court's inherent authority that, upon Plaintiff's request, Defendants and any financial institutions, payment processors, banks, escrow services, money transmitters, e-commerce shipping partner, fulfillment center, warehouse, storage facility, or marketplace platforms, and their related companies and affiliates, identify, restrain, and be required to surrender to Plaintiff all funds, up to and including the total amount of judgment, in all financial accounts and/or sub-accounts used in connection with the E-commerce Store Names, or other alias seller identification names used by Defendants presently or in the future, as well as any other related accounts of the same customer(s) and any other accounts which transfer funds into the same financial institution account(s), and remain restrained until such funds are surrendered to Plaintiff in partial satisfaction of the monetary judgment entered herein.

> s.       Entry of an award of pre-judgment interest on the judgment amount.

> t.       Entry of an order requiring Defendants, at Plaintiff's request, to pay the cost necessary to correct any erroneous impression the consuming public may have received or derived concerning the nature, characteristics, or qualities of Defendants' products, including without limitation, the placement of corrective advertising and providing written notice to the public.

> u.       Entry of an order for any further relief as the Court may deem just and proper.

DATED: May 12, 2025.                 Respectfully submitted,

                                      STEPHEN M. GAFFIGAN, P.A.

                                      By: **Stephen M. Gaffigan**
                                      Stephen M. Gaffigan (Fla. Bar No. 025844)
                                      Virgilio Gigante (Fla. Bar No. 082635)
                                      T. Raquel Wiborg-Rodriguez (Fla. Bar. No. 103372)
                                      Christine Ann Daley (Fla. Bar No. 98482)
                                      Mallory R. Denzl (Fla. Bar No. 1050351)
                                      401 East Las Olas Blvd., Suite 130-453
                                      Ft. Lauderdale, Florida 33301

Telephone: (954) 767-4819
E-mail: Stephen@smgpa.cloud
E-mail: Leo@smgpa.cloud
E-mail: Raquel@smgpa.cloud
E-mail: Christine@smgpa.cloud
E-mail: MalloryR@smgpa.cloud

Attorneys for Plaintiff, Spike Cable Networks Inc.

## SCHEDULE "A"

**[This page is the subject of Plaintiff's Motion to File Under Seal. As such, this page has been redacted in accordance with L.R. 5.4(b)(1)]**

## SCHEDULE "B"
## PLAINTIFF'S FEDERALLY REGISTERED TRADEMARKS

| Trademark | Registration Number | Registration Date | Class(es)/Good(s) |
|---|---|---|---|
|  | 7,093,865 | June 27, 2023 | IC 025: Clothing, namely, shirts, t-shirts, sweatshirts, sweaters, blouses, pants, jeans, trousers, shorts, suits, underwear, pajamas, jackets, coats, vests, socks, stockings, tights, dresses, skirts, headwear, namely, hats, caps, beanies, visors, headbands, bandanas; clothing accessories, namely, belts, ties, gloves, mittens, scarves; footwear; Halloween costumes |
|  | 7,239,237 | December 12, 2023 | IC 021: Mugs |
|  | 7,239,238 | December 12, 2023 | IC 025: Hats; Clothing, namely, shirts, t-shirts, sweatshirts, hoodies, vests; baby clothes, namely, pajamas, jackets, shirts, pants, jumper coveralls |